**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

CLAUDIA SAMPEDRO,
EVA PEPAJ,
GALLIENNE NABILA,
IRINA VORONINA,
JAIME EDMONDSON LONGORIA,
JANET GUZMAN,
MERCEDES TERRELL,
ROSA ACOSTA,
SANDRA VALENCIA,
STEPHANIE RAO and
YODIT YEMANE a/k/a JODIE JOE,

Plaintiffs,

- against -

THE BELLA FIORE COMPANY, INC d/b/a
MODELO BAR & GRILLE,

Defendant.

CIVIL ACTION NO.

**COMPLAINT**
**(Jury Trial Demanded)**

Plaintiffs CLAUDIA SAMPEDRO, EVA PEPAJ, GALLIENNE NABILA, IRINA VORONINA, JAIME EDMONDSON LONGORIA, JANET GUZMAN, MERCEDES TERRELL, ROSA ACOSTA, SANDRA VALENCIA, STEPHANIE RAO and YODIT YEMANE a/k/a JODIE JOE, (collectively, "Plaintiffs"), file this Complaint against THE BELLA FIORE COMPANY, INC, d/b/a MODELO BAR & GRILLE ("Defendant") respectfully allege as follows:

## BACKGROUND

1. This is an action for damages and injunctive relief relating to Defendant's misappropriation, alteration, and unauthorized publication and use in advertising of images of Plaintiffs, each of whom are well-known professional models, to promote their night club, MODELO BAR & GRILLE located at 543 W Thames St, Norwich, Connecticut 06360 (**hereinafter referred to as the "Night Club" or "Modelo"**).

2. As detailed below, Defendant's misappropriation and unauthorized use of Plaintiffs' images, photos and likenesses (collectively, "Images") constitutes: a) Violation of §43 of the Lanham Act, 15 U.S.C. §1125 (a)(1)(A) - False Association; b) Right of Privacy: Appropriation of Likeness; c) Right of Privacy: False Light; d) Connecticut Unfair Trade Practices Act, Conn. Gen. Stat.§ 42-110b; e) Negligence and Respondeat Superior; f) Conversion; g) Unjust Enrichment; and h) Quantum Meruit.

3. In addition to the actual, compensatory, and exemplary damages set forth below, Plaintiffs likewise seek an Order from this Court permanently enjoining Defendant from using any of their Images in any way and through any medium.

## JURISDICTION & VENUE

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiffs have stated claims under the Lanham Act, 15 U.S.C. § 1125(a)(1).

5. This Court has jurisdiction over the state law claims asserted, pursuant to 28 U.S.C. § 1367.

6. Plaintiffs are, and at all times relevant to this action have been, professional models who reside throughout the United States.

7. According to publicly available records, Defendant The Bella Fiore Company, Inc, is a corporation formed under the laws of the state of Connecticut, with its principal place of business located at 543 W Thames St, Norwich, Connecticut, 06360. Upon information and belief, The Bella Fiore Company, Inc operates Modelo Bar & Grille, which is located at 543 W Thames St, Norwich, Connecticut 06360.

8. Venue is proper in the United States District Court for the District of Connecticut because Defendant's principal place of business is located in Norwich, Connecticut, (New London County).

9. A significant portion of the alleged causes of action arose and accrued in Norwich, Connecticut and the center of gravity for a significant portion of all relevant events alleged in this complaint is predominately located in Norwich, Connecticut.

## PARTIES

***Plaintiffs***

10. Plaintiff Claudia Sampedro ("Sampedro") is a well-known professional model, and a resident of Miami-Dade County, Florida.

11. Plaintiff Eva Pepaj ("Pepaj") is a well-known professional model, and a resident of Los Angeles County, California.

12. Plaintiff Gallienne Nabila ("Nabila") is a well-known professional model, and a resident of Los Angeles County, California.

13. Plaintiff Irina Voronina ("Voronina") is a well-known professional model, and a resident of Los Angeles County, California.

14. Plaintiff Jaime Edmondson Longoria ("Longoria") is a well-known professional model, and a resident of Maricopa County, Arizona.

15. Plaintiff Janet Guzman ("Guzman") is a well-known professional model, and a resident of Los Angeles County, California.

16. Plaintiff Mercedes Terrell ("Terrell") is a well-known professional model, and a resident of Orange County, California.

17. Plaintiff Rosa Acosta ("Acosta") is a well-known professional model, and a resident of Los Angeles County, California.

18. Plaintiff Sandra Valencia ("Valencia") is a well-known professional model, and a resident of Colombia.

19. Plaintiff Stephanie Rao ("Rao") is a well-known professional model, and a resident of Los Angeles County, California.

20. Plaintiff Yodit Yemane a/k/a Jodie Joe ("Yemane") is a well-known professional model, and a resident of Los Angeles County, California.

***Defendants***

21. Defendant, The Bella Fiore Company, Inc, is a corporation formed under the laws of the state of Connecticut and registered to conduct business in Connecticut. During times relevant to this action, The Bella Fiore Company, Inc operated Modelo Bar & Grille.

22. Service of process may be perfected upon Defendant The Bella Fiore Company, Inc by serving the registered agent for service of process, Drislav Coric, who can be located at 45 Channing St, New London, CT 06320.

## FACTUAL ALLEGATIONS

23. Each Plaintiff is a well-known professional model who earns her livelihood modeling and licensing her Images to companies, magazines and individuals for the purpose of advertising products and services.

24. Plaintiffs' careers in the modeling industry place a high degree of value on their good will and reputation, which is critical to maximize their earning potential, book modeling contracts, and establish each of their individual brands. In furtherance of establishing, and maintaining, their brands, Plaintiffs are necessarily selective concerning the companies, and brands, for which they model.

25. Each of the Plaintiffs' Images was misappropriated, and intentionally altered, by Defendant to make it appear that they worked at, endorsed, or were otherwise associated or affiliated with Defendant.

26. In the case of each Plaintiff, this apparent claim was false.

27. Moreover, this misappropriation occurred without any Plaintiff's knowledge, consent, or authorization.

28. No Plaintiff has ever received any remuneration for Defendant's improper and illegal use of their Images, and Defendant's improper and illegal use of Plaintiffs' Images have caused each Plaintiff to suffer substantial monetary damages and harm to reputation.

29. Further, in certain cases Defendant misappropriated Plaintiffs' advertising ideas because the Images they misappropriated came from Plaintiffs' own social media pages, which each Plaintiff uses to market to potential clients, grow their fan base, and build and maintain their brand.

***Plaintiffs' Individual Backgrounds and Careers***

30. Sampedro is a Cuban born model, mother, and spokeswoman. Sampedro moved to Miami when she was 6 years old and at age 16, was discovered by Elite models. Sampedro has appeared in many catalogues, and magazine editorials. She has a number of cover credits for magazines such as Nine 5 Four, Shock, Face to Face and Mixed. Sampedro is a sponsored model for Nutri Sups Nutrition and is also a spokesmodel and contracted model for Bare Ava. Sampedro has three children and is married to former Green Bay's star defensive end Julius Peppers. Sampedro is in the Social Media Influencers top class with over a million Instagram followers and a further combined 150,000 fans on Facebook and X (formerly known as Twitter).[1]

31. Upon information and belief, Sampedro is depicted in the photo in Exhibit "A" to promote Modelo on its Facebook page. This Image was intentionally altered to make it appear that Sampedro was either an employee working at Modelo, that she endorsed Modelo, or that she was otherwise associated or affiliated with Modelo.

32. Sampedro has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

33. Pepaj is a professional model and actress who moved to Hollywood to pursue her career in 2004. Her work includes high fashion runway modeling, print features, and film roles. Pepaj has appeared in films such as The Hand Off, Interior, True Detective, Leather Bar and The

[1] In the modeling world and talent industry (in general), the number of online Instagram "followers", X "followers", and or Facebook "likes" is a strong factor in determining a model's earning capacity.

Romp, and was a feature model in a national Diet Coke TV commercial campaign. She is also a content creator, and has over 1.3 million Instagram followers, and her YouTube channel, shared with her husband, has over 2.28 million subscribers.

34. Upon information and belief, Pepaj is depicted in the photo in Exhibit "B" to promote Modelo on its Facebook page. This Image was intentionally altered to make it appear that Pepaj was either an employee working at Modelo, that she endorsed Modelo, or that she was otherwise associated or affiliated with Modelo.

35. Pepaj has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

36. Nabila is an actress and model residing in Los Angeles, California. From a young age she participated in pageants, public speaking, dance, community service work, and singing. Nabila has been in the entertainment industry for over a decade working with brands such as Fashion Nova. She is currently signed to Wilhelmina Los Angeles and has a nonprofit geared towards the empowerment and advancement of young women. Nabila has over 2 million social media followers.

37. Upon information and belief, Nabila is depicted in the photo in Exhibit "B" to promote Modelo on its Facebook page. This Image was intentionally altered to make it appear that Nabila was either an employee working at Modelo, that she endorsed Modelo, or that she was otherwise associated or affiliated with Modelo.

38. Nabila has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

39. Voronina is an international model and actress. After becoming Playboy's Miss January 2001, she represented international brands including SKYY Vodka, Miller Lite, Michelob

Ultra, Bacardi, and Sisley & Detour to name a few. She has millions of visual impressions around the globe via the covers and pages of worldwide magazines such as FHM, Maxim, Playboy (in 20 countries), Max, Ocean, Shape, 944, Knockout, Q, People, Kandy, Rukus, Vape and Browz magazines. In 2008, Voronina was named St. Pauli Girl spokes model and completed a 12-month PR tour across America. She became the first ever St. Pauli Girl to ring the NYSE closing bell representing Constellation Brands. In 2013, Voronina was named Kandy Magazine's Model of the Year as a result of her fans downloading the highest number of digital issues that year. Voronina got her first big screen break in "Reno 911! Miami.". Her credits include a series regular role in the fully improvised sitcom "Svetlana" for HD Net, the first ever live action show on Adult Swim Network "Saul of the Mole Men," guest star appearance on Nickelodeon's "iCarly," Comedy Central's "Reno 911!", and feature film parts in "Balls of Fury," & "Piranha 3DD," "Laser Team," and "Killing Hasselhoff." She starred in the indie action flick "Scramble" which she also co-produced. Voronina tours and performs nationally as a stand-up comedian. She loves connecting with her fans and stays active daily across all social media outlets for her followers on Facebook, Instagram, X (formerly known as Twitter) and YouTube. She has more than 5.6 million social media followers.

40. Upon information and belief, Voronina is depicted in the photo in Exhibit "C" to promote Modelo on its Facebook page. This Image was intentionally altered to make it appear that Voronina was either an employee working at Modelo, that she endorsed Modelo, or that she was otherwise associated or affiliated with Modelo.

41. Voronina has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

42. Longoria comes from a family of police officers. She graduated from Florida Atlantic University with a degree in Criminal Justice in 2002. She worked the night shift as a police officer in Boca Raton, Florida for two years until quitting to become a cheerleader for the

Miami Dolphins. Longoria was a participant in the competitive reality TV series "The Amazing Race 14." Longoria was Playmate of the Month in the January 2010 issue of Playboy. She has been a sports blogger for Playboy online and co-host of Sirius Fantasy Sports Radio. She appeared on "The Bunny House" documentary, in the Trace Adkins video for "This Ain't No Love Song," and numerous other television, print, radio, and online outlets. Longoria and her husband, MLB Superstar Evan Longoria have 3 children.

43. Upon information and belief, Longoria is depicted in the photo in Exhibit "D" to promote Modelo on its Facebook page. This Image was intentionally altered to make it appear that Longoria was either an employee working at Modelo, that she endorsed Modelo, or that she was otherwise associated or affiliated with Modelo.

44. Longoria has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

45. Guzman is a social media star who is widely known for her self-titled Instagram page. She has gained popularity there for her modeling and lifestyle photos, surpassing over 2 million followers. She's widely known to be Fashion Nova's number 1 featured talent. She mostly promotes the clothes of the Fashion Nova clothing brand on her Instagram and has also appeared on the Fashion Nova Billboard located at Melrose and Fairfax (California). She was featured in an exclusive video interview with Fashion Nova in March of 2022. She has also seen her janetguzman_TikTok channel become widely popular, with her videos on the platform earning over 1.9 million total likes. She also runs a popular OnlyFans subscription account and a travel/lifestyle/fashion vlog on YouTube.

46. Upon information and belief, Guzman is depicted in the photo in Exhibit "E" to promote Modelo on its Facebook page. This Image was intentionally altered to make it appear that Guzman was either an employee working at Modelo, that she endorsed Modelo, or that she was otherwise associated or affiliated with Modelo.

47. Guzman has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

48. Terrell is an American model and spokesmodel. Terrell is a contract model who travels and works with Monster Energy Supercross. Terrell also appears with The Superbike Races special events and also with Moto GP Championship races. Terrell is probably best known and has a huge social media following as the main Ring Girls for Bellator MMA fighting. Ms. Terrell has featured in a number of magazines and has appeared on the cover of Wheels and Heels magazine, Dub Magazine, Beer magazine, Girls Lowrider and many more. She also has her own podcast show known as The MAJic hour, and her talk show named "Mercedes and the Chap." She currently has 585,000 Instagram followers, 4.6 million followers on Facebook, and 126,100 followers on TikTok.

49. Upon information and belief, Terrell is depicted in the photo in Exhibit "F" to promote Modelo on its Facebook page. This Image was intentionally altered to make it appear that Terrell was either an employee working at Modelo, that she endorsed Modelo, or that she was otherwise associated or affiliated with Modelo.

50. Terrell has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

51. Acosta started her classic ballet studies at the age of four at the Centro de la Cultura in Santiago, Dominican Republic. She later moved on to the ICA, (Instituto de Cultura y Arte), where she excelled as one of the most gifted students of the academy. After graduating with honors from the ICA and the Ballet School of Norma Garcia with a bachelor's in art with mention to Classic Ballet, she became part of the Dominican Nacional Ballet as the youngest soloist member in 2002. Partaking in all major classic and modern shows in the Dominican Republic, she was

nominated twice by the Secretaria de Estado de la Juventud for her work in the category of Cultural Development. She initiated her modeling career in 2004, participating in magazines and television for prestigious Dominican enterprises. Acosta moved to the United States in 2006 where her career took a new turn, distinguishing herself in several areas of the modeling world, featuring in magazines, radio, television programs and commercials and numerous music videos. She has over 52,000 Facebook followers, over 1.6 million Instagram followers, and over 280,000 Twitter followers.

52. Upon information and belief, Acosta is depicted in the photo in Exhibit “G” to promote Modelo on its Facebook page. This Image was intentionally altered to make it appear that Acosta was either an employee working at Modelo, that she endorsed Modelo, or that she was otherwise associated or affiliated with Modelo.

53. Acosta has never been employed at Defendant’s establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant’s unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

54. Valencia is, and at all times relevant to this action was, a successful professional model with numerous accomplishments. She is regarded as one of the top models in her home country of Colombia. Valencia has modeled in Ecuador, Peru, The Dominican Republic, Mexico and Venezuela. She has worked with clients such as Diesel, Americanino, Leonisa, Chevignon, and Onde de Mar, and is the contract face of Bésame Lingerie. She currently has 151,000 Instagram followers and over 72,300 X (formerly known as Twitter) followers.

55. Upon information and belief, Valencia is depicted in the photo in Exhibit “H” to promote Modelo on its Facebook page. This Image was intentionally altered to make it appear that Valencia was either an employee working at Modelo, that she endorsed Modelo, or that she was otherwise associated or affiliated with Modelo.

56. Valencia has never been employed at Defendant’s establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has

received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

57. Rao who is originally from Miami, FL currently resides in Los Angeles and is an influencer/model. She is currently representing Fashion Nova and has previously worked for Shein & PrettyLittleThing. She has appeared alongside Kim Kardashian in a Carolina Lemke glasses advertisement as well as other high profile ad campaigns. She has her own website which focuses on providing a fitness journey to her clients and promoting physical, mental, and spiritual wellness. Rao has over 1.1 million Instagram followers.

58. Upon information and belief, Rao is depicted in the photo in Exhibit "I" to promote Modelo on its Facebook page. This Image was intentionally altered to make it appear that Rao was either an employee working at Modelo, that she endorsed Modelo, or that she was otherwise associated or affiliated with Modelo.

59. Rao has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

60. Yemane is a social media and modeling influencer with well over 1 million followers on Instagram, while she has appeared in music videos with Tyga and appeared on Nick Cannons' Wild N Out and worked for Pretty Little Thing Fashion House this model of Eritrean descent Is mostly known and now famous in the fashion industry for her near decade long association and Brand Ambassador with Fashion Nova (which has more than 10% of the USA fashion market) she was the first model to have her own clothing line collaboration with Fashion Nova, and the 34 year old is regarded as one of the highest paid models in the industry

61. Upon information and belief, Yemane is depicted in the photo in Exhibit "J" to promote Modelo on its Facebook page. This Image was intentionally altered to make it appear that Yemane was either an employee working at Modelo, that she endorsed Modelo, or that she was otherwise associated or affiliated with Modelo.

62. Yemane has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

***Defendant's Business Activity and Misappropriation***

63. Defendant operates (or operated, during the relevant time period,) a Night Club, where they are (or were) engaged in the business of selling alcohol and food in a sexually charged atmosphere.

64. Defendant owns, operates, and controls Modelo's social media accounts, including its Facebook, Twitter, and Instagram accounts.

65. Defendant used Modelo's Facebook, Twitter, and Instagram accounts to promote Modelo's, and to attract patrons.

66. Defendant did this for their own commercial and financial benefit.

67. Defendant has used, advertised, created, printed, and distributed the Images of Plaintiffs, as further described and identified above, to create the false impression with potential clientele that each Plaintiff either worked at Modelo, endorsed Modelo, or was otherwise associated or affiliated with Modelo.

68. Defendants used Plaintiffs' Images and created the false impression with the public that Plaintiffs worked at or endorsed Modelo to receive certain benefits from that false impression, including but not limited to: monetary payments; increased promotional, advertising, marketing, and other public relations benefits; notoriety; publicity; and an increase in business revenue, profits, proceeds, and income.

69. Defendant was well aware that none of the Plaintiffs have ever been affiliated with or employed by Modelo, and at no point have any of the Plaintiffs ever endorsed Modelo or otherwise been affiliated or associated with Modelo.

70. All of Defendant's activities, including their misappropriation and republication of Plaintiffs' Images, were done without the knowledge or consent of Plaintiffs

71. Defendant has never compensated Plaintiffs for the unauthorized use of Plaintiffs' Images.

72. Plaintiffs have never received any benefit from Defendant's unauthorized use of their Images.

***Standard Business Practices in the Modeling Industry***

73. It is common knowledge in the modeling industry that the hiring of a model for a commercial purpose involves a particularized methodology and process.

74. The fee that a professional model, like each Plaintiff, will receive is negotiated by their agency, and involves consideration of, without limitation, at least the following factors: a) the reputation, earning capacity, experience, and demand of that particular model; b) where and how long the photo shoot takes place; c) where and how the images are going to be used by the client (*e.g.*, company website, social media, television commercials, billboards, or posters), known in the modeling industry as "usage"; and, d) the length of time the rights to use the photos will be assigned, known in the modeling industry at the "term."

75. Most licenses to use a model's image are for one, two, or three year terms; but almost never is there a "lifetime" term.

***Defendant's Misappropriation of Plaintiffs' Images***

76. Defendant was aware that, by using Plaintiffs' Images, they were violating Plaintiffs' right to privacy, Plaintiffs' right of publicity, and creating a false impression to potential customers that Plaintiffs worked at or endorsed Modelo.

77. Unauthorized use of Plaintiffs' Images deprives them of income they are owed relating to the commercialization of their Images.

78. In addition, Plaintiffs allege that any the improper unauthorized use of their Images at issue in this case has substantially injured their respective careers and reputations, because of the negative connotations of false impression of association with Modelo.

79. At no point was any Plaintiff ever contacted by any Defendant, or any representative of any Defendant, to request the use of any of Plaintiffs' Images.

80. No Defendant ever obtained, either directly or indirectly, permission to use any of Plaintiffs' Images.

81. No Defendant ever paid any Plaintiff for its use of her Images on any promotional materials, including Modelo's website, Twitter, Facebook, or Instagram accounts.

82. Defendants used Plaintiffs' Images without their consent, and without providing remuneration, in order to permanently deprive each of the Plaintiffs of her right to use her Images.

83. Further, Plaintiffs are informed and believe, and thereon allege, that the unauthorized use, display, publication, and commercial exploitation of Plaintiffs' images by Defendant was not openly disclosed to Plaintiff and were not reasonably discoverable through ordinary diligence at the time the subject images were initially posted or published.

## FIRST CAUSE OF ACTION
**(Violation of §43 of the Lanham Act, 15 U.S.C. §1125 (a)(1)(A) - False Association)**

84. Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

85. Section 43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(A) applies to Defendant, and protects Plaintiffs from the conduct described herein.

86. Defendant used Plaintiffs' image in order to create the false impression with the public that Plaintiffs either worked at Defendants' establishment, or endorsed Defendant's business. This was done to promote and attract clientele to Defendant 's establishment, and thereby generate revenue for Defendant.

87. Thus, this was done in furtherance of Defendant's commercial benefit.

88. Plaintiffs are in the business of commercializing their identity and selling their images to reputable brands and companies for profit. Defendant's customers are the exact demographic that view Plaintiffs' images in magazines and online. By virtue of Plaintiffs' use of their image and identify to build their brand, they have acquired a distinctiveness through secondary meaning. Plaintiffs' image either suggests the basic nature of their product or service, identifies the characteristic of their product or service, or suggest the characteristics of their product or service that requires an effort of the imagination by the consumer in order to be understood as descriptive. As such, their brand – the reason their clients seek to hire them – is unique in that it is encompassed in their identity, i.e., their persona.

89. Both Plaintiffs and Defendant compete in the entertainment industry, use similar marketing channels and their respective endeavors overlap. They vie for the same dollars from the same demographic consumer group.

90. As such, an unauthorized use of Plaintiffs' image to promote an establishment created an undeniable confusion in Defendant consumers' minds, which lead to competitive injury to Plaintiffs. There is no doubt that Defendant used Plaintiffs' image for advertising purposes, that is to promote its business enterprises, as such, Defendant's unauthorized and unlawful use of Plaintiffs' image and likeness was an existing intent to commercialize an interest in Plaintiffs' image and likeness.

91. Defendant's use of Plaintiffs' image, likeness and/or identity constitutes a false designation of the source of origin, sponsorship, approval, or association which have deceived Plaintiffs' fans and present and prospective clients into believing that Defendant's establishment advertisements are endorsed by Plaintiffs, or sponsored, approved or associated with Plaintiffs.

92. Despite the fact that Defendant was at all times aware that Plaintiffs neither worked at, nor endorsed its establishment, nevertheless, they used Plaintiffs' image in order to mislead potential customers as to Plaintiffs' employment at and/or affiliation with Defendant's establishment.

93. Defendant knew that its use of Plaintiffs' image would cause consumer confusion as to Plaintiffs' sponsorship and/or employment at Defendant's establishment.

94. Upon information and belief, Defendant's use of Plaintiffs' image did in fact cause consumer confusion as to Plaintiffs' employment at and/or endorsement of Defendant's businesses, and the goods and services provided by Defendant.

95. As a direct and proximate result of Defendant's actions, Plaintiffs have no control over the nature and quality of the line of products or services provided by Defendant, the nature of the advertisements depicting Plaintiffs' image, likeness and/or identity, or how Plaintiffs' image, likeness and/or identity is being depicted by Defendant.

96. Further, any failure, neglect or default by Defendant will reflect adversely on Plaintiffs as the believed source of origin, sponsorship, approval or association thereof, hampering efforts by Plaintiffs to continue to protect their reputation for high quality professional modeling, resulting in loss of sales thereof and the considerable expenditures to promote their personal modeling services to legitimate mainstream media, all to the irreparable harm of Plaintiffs.

97. Due to Defendant's unauthorized use of Plaintiffs' image, Plaintiffs have been damaged in an amount to be determined at trial.

98. WHEREFORE, Plaintiffs respectfully request that the Court enter a judgment against Defendant and grant actual or compensatory damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendant's unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

## SECOND CAUSE OF ACTION
## (Right of Privacy: Appropriation of Likeness)

99. Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

100. As set forth hereon, Defendant has violated each Plaintiff's common law right to privacy under Connecticut law.

101. Defendant has done so by appropriating each Plaintiffs' likeness for commercial purposes without authority or consent.

102. Defendant invaded and violated Plaintiffs' privacy and misappropriated their likeness by publishing their Images on Defendant's website or related social media accounts as part of Defendant's advertising campaign.

103. At all relevant times, the Defendant's website and social media accounts were used and operated by Defendant for advertising and trade purposes.

104. Defendant's website and social media accounts were designed to attract business to Defendant's business and generate revenue for Defendant.

105. Plaintiffs are informed and believe and hereon allege that the manner in which Defendant posted and publicized their image and likeness in a manner that was hidden, inherently undiscoverable, or inherently unknowable, in that Defendant published their image and likeness on social media threads that, over time, are (for example, but not limited to) "pushed" down in time from immediate visibility.

106. Plaintiffs are further informed and believe and hereon allege that discovery will prove that Defendant's republicized Plaintiffs' image and likeness on various occasions, via different mediums, after the initial date of the posting of their image and likeness and through the filing of this complaint.

107. Plaintiffs are informed and believe and hereon allege that Defendant's republication of Plaintiffs' image and likeness was altered so as to reach a new audience and/or promote a different product.

108. Upon information and belief, Defendant use of Plaintiffs''s Images did in fact attract clientele and generate business for Defendant's establishment.

109. At no point did any Defendant ever receive permission or consent to use any Plaintiffs' Image on its website or social media account.

110. Defendant was at all relevant times aware that it never received any Plaintiffs' permission or consent to use their Images on any website or social media account, or on any other medium, in order to promote Defendant's business.

111. At no point did Defendant ever compensate Plaintiffs for its use of their Images.

112. No applicable privilege or authorization exists for Defendant's use of Plaintiffs' Images.

**THIRD CAUSE OF ACTION**
**(Right of Privacy: False Light)**

113. Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

114. As set forth hereon, Defendant has violated each Plaintiffs' common law right to privacy under Connecticut law.

115. Defendant has done so by appropriating each Plaintiff's likeness for commercial purposes without authority or consent and then portraying each Plaintiff in a false light in Defendant's advertisements.

116. Plaintiffs are informed and believe and hereon allege that the manner in which Defendant posted and publicized their image and likeness in a manner that was hidden, inherently undiscoverable, or inherently unknowable, in that Defendant published their image and likeness on social media threads that, over time, are (for example, but not limited to) "pushed" down in time from immediate visibility.

117. Plaintiffs are further informed and believe and hereon allege that discovery will prove that Defendant's republicized Plaintiffs' image and likeness on various occasions, via different mediums, after the initial date of the posting of itheir image and likeness and through the filing of this complaint.

118. Plaintiffs are informed and believe and hereon allege that Defendant's republication of Plaintiffs' image and likeness was altered so as to reach a new audience and/or promote a different product.

119. Specifically, Defendant invaded and violated Plaintiffs' privacy and portrayed them in a false light by creating the false impression with the consumers that Plaintiffs were either working at Defendant's establishment, endorsed same, were affiliated, associated, or otherwise connected with same, or had agreed to promote same.

120. Affiliation with Defendant's establishment could lead to significant potential career and personal damage to a professional model because it could lead other clients to refuse to work with them or drop them as a model.

121. At all relevant times, the Defendant's website and social media accounts were used and operated by Defendant for advertising and trade purposes.

122. Defendant's website and social media accounts were designed to attract business to Defendant's business and generate revenue for Defendant.

123. Upon information and belief, Defendant use of Plaintiffs' Images did in fact attract clientele and generate business for Defendant's establishment.

124. At no point did any Defendant ever receive permission or consent to use any Plaintiff's Image on its website or social media account.

125. Defendant was at all relevant times aware that it never received any Plaintiff's permission or consent to use their Images on any website or social media account, or on any other medium, in order to promote Defendant's business.

126. At no point did Defendant ever compensate Plaintiffs for its use of their Images.

127. No applicable privilege or authorization exists for Defendant's use of Plaintiffs' Images.

## FOURTH CAUSE OF ACTION
### (Connecticut Unfair Trade Practices Act, Conn. Gen. Stat.§ 42-110b)

128. Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

129. Defendant operated Defendant's website and social media accounts in order to promote Defendant's establishment, to attract clientele thereto, and to thereby generate revenue for Defendant.

130. As such, Defendant’s operation of the website and social media accounts, and their publication of Images thereon, was consumer-oriented in nature and occurred in the trade and commerce with the State of Connecticut.

131. Defendant published Plaintiffs’ Images on Defendant's website and social media accounts in order to create the false impression that Plaintiffs were either working at Defendant's business, endorsed Defendant's business, or were otherwise affiliated, associated, or connected with Defendant's business.

132. As such, Defendant's intent in publishing Plaintiffs’ Images was to mislead the public as to Plaintiffs’ employment at and/or affiliation with Defendant's business.

133. Such conduct constitutes unfair and deceptive acts and practices, and unfair competition under Connecticut law.

134. Defendant's advertising practices offends the public policy of Connecticut insofar as it constitutes misappropriation of Plaintiffs’ property rights in their own Images, and invasion of Plaintiffs’ privacy, for Defendant's commercial benefit.

135. Defendant's advertising practices are immoral, unethical, oppressive and unscrupulous insofar as they have sought to confuse the public for their own commercial benefit by implying that Plaintiffs are affiliated, endorse, are associated with and/or are working at Defendant's establishment.

136. Defendant's advertising practices cause substantial injury to consumers by creating the false impression that Plaintiffs are working at, endorse, or are otherwise affiliated with, Defendant's establishment.

137. There are no benefits to Defendant's advertising practices as set forth hereon except a benefit to Defendant's own commercial interests.

138. As a result of Defendant's' unauthorized and misleading publication of Plaintiffs' Images on their Club's website and social media accounts, each of the Plaintiff s' reputations were injured, and each of the Plaintiffs' ability to market herself as a model was injured.

139. As a result of Defendant's unauthorized and misleading use of Plaintiffs' Images, Plaintiffs have suffered damages in an amount to be determined at trial, including punitive and exemplary damages.

140. As required by Conn. Gen. Stat. 42-110g(c), Plaintiffs have transmitted a copy of this Complaint to the Office of the Attorney General of the State of Connecticut.

## FIFTH CAUSE OF ACTION
**(Negligence and *Respondeat Superior*)**

141. Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

142. Plaintiffs are further informed and believe and hereon allege that Defendant maintains or should have maintained employee policies and procedures which govern the use of intellectual property, publicity rights, and/or the image and likeness of individuals for promotional and advertising purposes which specifically prevent the unauthorized and non-consensual use of intellectual property, publicity rights and/or the image and likeness of individuals for promotional and advertising purposes.

143. Further, Defendant should have maintained, or failed to maintain, policies and procedures to ensure that its promotional and/or advertising materials and campaigns were not deceptive or misleading in their advertising practices.

144. Defendant owed a duty of care to Plaintiffs to ensure that its advertising and promotional materials and practices did not infringe on their property and publicity rights.

145. Defendant further owed a duty of care to consumers at large to ensure that their promotional and/or advertising materials and campaigns were not deceptive or misleading in their advertising practices.

146. Defendant breached its duty of care to both Plaintiffs and consumers by failing to either adhere to or implement policies and procedures to ensure that the use of intellectual property, publicity rights, and/or the image and likeness of individuals for promotional and advertising purposes were not unauthorized, non-consensual, or false and deceptive.

147. Defendant further failed to enforce or implement the above-stated policies and/or to communicate them to employees, and/or supervise its employees in order to ensure that these policies, along with Federal and Connecticut law, were not violated. Defendant breached its duty of care to Plaintiffs and consumers by its negligent hiring, screening, retaining, supervising, and/or training of its employees and agents.

148. Defendant's breach was the proximate cause of the harm Plaintiffs suffered when their Images were published without their consent, authorization, and done so in a false, misleading and/or deceptive manner.

149. As a result of Defendant's negligence, Plaintiffs have suffered damages in an amount to be determined at trial.

**SIXTH CAUSE OF ACTION**
**(Conversion)**

150. Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

151. Each Plaintiff is, and at all relevant times were, the exclusive owners of all right, title and interest in their Images, and have property interests thereon.

152. By the conduct detailed above, Defendant converted Plaintiff's property rights in their Images for its own use and financial gain Images for its own use and financial gain.

153. As a result of Defendant's unlawful conversion of Plaintiffs' Images, and publication of same, Plaintiffs have suffered damages in an amount to be determined at trial.

**SEVENTH CAUSE OF ACTION**
**(Unjust Enrichment)**

154. Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

155. As set forth in detail above, Defendant published Plaintiffs' Images in order to promote Defendant's business to the general public and potential clientele.

156. Defendant's publication was for the purpose of creating a false impression to the general public that Plaintiffs were either working at Defendant's business, or endorsed Defendant's business.

157. Defendant's purpose in publishing Plaintiffs' Images was to benefit commercially due to their purported association with, employment of, and/or endorsement by Plaintiffs.

158. Upon information and belief, Defendant did in fact benefit commercially due to its unauthorized use of Plaintiffs' Images.

159. Defendant has been enriched by its unauthorized control over, and publication of, Plaintiffs' Image because said publication has assisted Defendant in attracting clientele to its establishment.

160. Plaintiffs have not been compensated for Defendant's commercial exploitation of their Images, and thus any financial benefit which Defendants received due to said exploitation is unjust.

161. As such, Plaintiffs have been damaged in an amount to be determined at trial.

**EIGHTH CAUSE OF ACTION**
**(Quantum Meruit)**

162. Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

163. Plaintiffs are each internationally known models who earn their livings appearing in, inter alia, commercials, advertisements, and publications on behalf of companies and brands.

164. Companies and brands that choose to hire Plaintiffs compensate them for their appearances.

165. Although Defendant has availed themselves of the benefit of being associated with Plaintiffs, and making it appear to potential customers that Plaintiffs either work, endorse, or are otherwise affiliated with its business, Defendant has not compensated Plaintiff.

166. Plaintiffs are therefore entitled to reasonable compensation for Defendant's business unauthorized use of their Images.

**DEMAND FOR JURY TRIAL**

Plaintiffs demand a trial by jury.

**PRAYER FOR RELIEF**

Plaintiffs respectfully request Judgment in their favor and against Defendant as follows:

(a) For actual damages, in an amount to be determined at trial, relating to Plaintiffs' Causes of Action;

(b) For an order permanently enjoining Defendant from using Plaintiffs' Images to promote Modelo's Night Club;

(c) For punitive damages and treble damages under the Lanham Act, 15 U.S.C. § 1117;

(d) For all costs and attorneys' fees incurred by Plaintiffs in the prosecution of this Action pursuant to the Lanham Act, 15 U.S.C.§ 1117;

(e) For such other and further relief as the Court may deem just and proper.

**THE PLAINTIFFS**

By: *<u>/s/ Matthew C. Mason</u>*
Matthew C. Mason (ct 15291)
GREGORY AND ADAMS, P.C.
190 Old Ridgefield Road
Wilton, CT 06897
(203) 762-9000
mmason@gregoryandadams.com

Dated: September 1, 2026.
New York, NY

/s/ John V. Golaszewski
John V. Golaszewski
New York Bar No. 4121091
Pro Hac Vice Application Forthcoming
**THE CASAS LAW FIRM, P.C.**
1325 Avenue of the Americas, 28th Floor
New York, NY 10019
Tel: 855-267-4457
Fax: 855-220-9626
john@talentrights.law